GEORGE B. FOSTER, ADMINISTRATRIX OF THE ESTATE OF JULIA DAVIS, DECEASED, DEFENDANT IN ERROR, v. THE FRATERNAL AID UNION, A CORP., DEFENDANT, MARY E. BELL, INTERVENOR, PLAINTIFF IN ERROR.—87 S. W. (2d) 669.

Kansas City Court of Appeals. April 1, 1936.

*Burrus & Burris* for defendant in error.

*Jay L. Oldham* for plaintiff in error.

TRIMBLE, J.—This is an action on a fraternal beneficiary certificate executed by the Fraternal Aid Union, a Kansas corporation, authorized, however, to issue such life insurance policies in the State of Missouri. The certificate was issued on the life of Warren T. Davis in the sum of $700, and provided that $100 should be paid annually, beginning May 11, 1927, and each year thereafter until the sum of $700 had been fully expended. The certificate provided that in the event of the death of said Warren T. Davis before the full $700 had been paid, then the remaining sum due thereon should be paid to Julia C. Davis, wife of said certificate holder.

On the 30th day of April, 1928, after the payment of $100 had been made on said certificate to said Warren T. Davis, the latter died while a resident of Jackson County, Missouri, and the sum of $600 was then due on said certificate.

On the death of said Warren T. Davis, his widow, Julia C. Davis, made proof thereof to said Fraternal Aid Union and demanded payment of said $600. Before payment of same was made, Julia C. Davis died on March 8, 1929, and George B. Foster, became the administrator of her estate and brought suit on said certificate for $600 with interest at six per cent from April 30, 1928.

Defendant answered setting up that the $600 was due, but owing to the fact that Mary E. Bell was claiming it as well as Julia C. Davis, it was unable to safely pay said sum to either of the claimants and, therefore, asked that plaintiff administrator and Mary E. Bell be ordered to interplead, and defendant, the Fraternal Aid Union, be allowed to pay the amount due on the certificate to the clerk of the court to await the order of the court.

Whereupon, said Mary E. Bell filed an intervening petition, wherein the facts concerning the existence of said certificate and the amount of $600 due thereon, were admitted, as well as the deaths of

Warren T. Davis and Julia C. Davis on the respective dates hereinabove stated.

Said interplea had attached thereto an agreement dated June 8, 1926, as follows:

"We, Julia C. Davis and Warren T. Davis, wife and husband, hereby appoint Mary E. Bell as our agent and trustee to look after our maintenance, support and payment of the premium on life insurance of Warren T. Davis in The Fraternal Aid Union, and we have this day delivered our check drawn on the Commerce Trust Company, payable to the order of Mary E. Bell in the sum of Fifteen Hundred Dollars.

"This agreement may be terminated at any time by either party hereto.

"We agree to pay said Mary E. Bell as compensation for looking after our business, five per cent of all disbursements.

"Upon the death of said Julia C. Davis and Warren T. Davis, then the residue of our estate remaining after the payment of all just debts, we give, devise and bequeath to said Mary E. Bell as extra compensation for her faithful service and kind attention to us.

"Executed in duplicate.

"(Signed)   MRS. JULIA C. DAVIS,
"(Signed)   WARREN T. DAVIS, X,
"(Signed)   MARY E. BELL.

"Witnesses:
"J. DONALD O'HERN,
"JAY L. OLDHAM."

Said interplea also set up an assignment in writing, alleged to have been made by Julia C. Davis, January 7, 1929, with Mary E. Bell, which recites that:—

"In consideration of the many kind acts and deeds and my love and affection for Mary E. Bell, I, Julia C. Davis, assign, transfer and convey to said Mary E. Bell, all my present and future rights, title and interest in and to the insurance policy No. 293614 of the Fraternal Aid Union, issued to my husband, Warren T. Davis, in which I am named as his beneficiary at his death.

"I further assign, transfer and convey to said Mary E. Bell, all my right, title and interest in and to all money due me under the terms of said above described insurance policy upon the death of my husband, Warren T. Davis, and I authorize and empower said Mary E. Bell to execute all necessary releases to said The Fraternal Aid Union and they are to have the same binding effect as if I executed same.

"Dated at Jackson County, Missouri, this 7 day of January, 1929.

"(Signed)   JULIA C. DAVIS.

"Witnesseth:
"(Signed)   ROSALIE ALLENBERG."

Plaintiff administrator, in his answer to said interplea, admitted all the facts except that he denied that Julia C. Davis, did on January 7, 1928, or at any other time, assign said certificate or policy of insurance to the intervenor, Mary E. Bell. He further set up that:

"Plaintiff further states that said purported assignment, if it bears the genuine signature of said Julia C. Davis, was obtained while said Julia C. Davis was physically weak and infirm and while she was of unsound mind, and that the said Mary E. Bell paid nothing to her nor gave anything of value in exchange for said assignment, and that if the said purported assignment bears her signature, it is ineffective for said reasons.

"Plaintiff further states that if said purported assignment was in truth and in fact signed by said Julia C. Davis, in (it) was void and ineffective for the reason that the Fraternal Aid Union did not approve or consent to the assignment of the said insurance policy; and that the said purported assignment is void for the reason it is in effect a change of beneficiary from the wife of the insured to intervener, Mary E. Bell, who had no insurable interest in the life of said Warren T. Davis."

Wherefore, administrator prayed the court to decree said sum of money as the property of said estate of Julia C. Davis, deceased, and that it be paid to said administrator.

And, in answer to the second count of said intervening petition, administrator denied any agreement was made or executed between Julia C. Davis and Warren T. Davis, with claimant, Mary E. Bell, but that if said agreement was made, said Mary E. Bell failed and refused to comply with the conditions incumbent upon her in that she failed to provide, or render any services or given any attention to said Julia C. Davis and Warren T. Davis, but on the contrary caused them to be placed in the Jackson County Home for the Aged and Insane, a public institution and a charge upon the County Pauper Fund of Jackson County, Missouri; and said plaintiff administrator again prayed the court to decree said sum of money as the property of Julia C. Davis estate and that it be paid to her administrator. Intervener's reply was a general denial.

After hearing the evidence, the court rendered a decree in favor of plaintiff administrator directing a recovery against defendant, Fraternal Aid Union for $600 with interest at six percent from April 30, 1928, the date of Warren T. Davis' death, amounting to $210 "and that the costs herein, up to the time of the filing of the bill of interpleader by the defendant, Fraternal Aid Union, be assessed against it, the defendant, Fraternal Aid Union, and such costs, amounting to the sum of Seven and 70/100 Dollars."

The court further decreed that intervener, Mary E. Bell, take nothing by reason of the intervening petition, and all costs accruing after

the filing of the answer and cross-petition for a bill of interpleader as filed by defendant, Fraternal Aid Union, be assessed against the intervener, Mary E. Bell.

Wherefore, judgment was rendered in favor of plaintiff as administrator, against defendant, Fraternal Aid Union, in the sum of $810 with interest at six per cent from date of judgment; that intervener, Mary E. Bell, take nothing by reason of her intervening petition, and costs in the sum of $8.40 be assessed against her, and execution issue against each accordingly. Intervener, Mary E. Bell, duly appealed.

The evidence introduced by the plaintiff administrator made a prima facie case for him. Thereupon, the intervener, Mary E. Bell, introduced the written instrument aforesaid, dated January 7, 1928, by which she claims Julia C. Davis assigned all interest in the insurance certificate on the life of Warren T. Davis, the consideration being recited to be "In consideration of the many kind acts and deeds and my love and affection for Mary E. Bell."

It will be observed and the evidence so shows, that the date of the above purported assignment was before the death of Warren T. Davis, who did not die until April 30, 1928. Aside from the question of whether Julia C. Davis had at the time of the purported assignment, any vested interest in the certificate before Warren T. Davis' death, it must be remembered that the insured, Warren T. Davis, was entitled to be paid $100 annually, beginning May 11, 1927, and each year thereafter during his lifetime, until the sum of $700, the full amount of the certificate was paid.

It would seem, therefore, that while her husband was living, Julia C. Davis had no interest which could be assigned by her contrary to the rights and benefits of the parties to the insurance contract. But without regard to this, section 5751, Revised Statutes of Missouri, 1929 (6 Mo. St. Ann., p. 4406), applying to the policy or certificate sued on, says: "Any assignment of a policy or certificate to a person *having no insurable interest* in the insured life shall render such assignment void and of no effect." (Italics ours.) Mary E. Bell had no insurable interest in the insured's life and the purported or attempted assignment could have no effect.

If the rights or interest of Mary E. Bell are claimed under the alleged "agreement" dated June 8, 1926, then it is manifest that it cannot operate, as a will under the last paragraph thereof, and, if any rights are secured under the agreement to Mary E. Bell, it could only be after a complete statement of the expenditure of the $1500 turned over to her; and, if any further money was due her for premium or assessment advanced by her to keep the certificate alive, she could not secure anything beyond what she paid out of her own funds for that purpose. No statement or showing of any kind was offered in this regard.

In addition to this, the only way Mary E. Bell could recover for money, if any, paid by her for Julia C. Davis, would be to present a demand against her estate in the probate court. Any such claim cannot be made in a proceeding of the kind attempted in this suit. The probate court is the jurisdiction provided by law for the adjudication of such matters. [Citizens Bank & Trust Co. v. Moore, 215 Mo. App. 21, 28.]

There was some evidence in favor of the administrator that Julia C. Davis was not of sound mind on January 7, 1928, when the assignment is alleged to have been made and, hence, the trial court may have thought that she was not capable of making such an assignment, if it were otherwise legal. The administrator of the Julia C. Davis estate is the proper one to recover the fund due her as the dead beneficiary in the said certificate.

It may be true that Jackson County, having duly accepted Warren T. Davis and Julia C. Davis, his wife, as poor persons, into the Jackson County Home for the Aged and Infirm, with no provision for the repayment of such expense, is not entitled to recover the amount thereof from Julia C. Davis' estate (Art. 4, Chapter 90, R. S. Mo. 1929; 48 C. J., pp. 519, 544; Chariton County v. Hartman, 190 Mo. 71, 77.] But that is something that will not assist intervener in her claim. The decree rendered by the trial judge was correct, and it must be accordingly affirmed. All concur.